IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EARLENE M. GARDNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-04-1393-L |
| | ) |
| JO ANNE B. BARNHART, | ) |
| COMMISSIONER OF THE SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Earlene Gardner seeks judicial review from the denial of benefits by the Social Security Administration ("SSA"). Based on a failure to consider an impairment and various physicians' opinions, the Court should reverse and remand for further proceedings.[1]

I.   BACKGROUND

Ms. Gardner applied for supplemental security income ("SSI") and insurance benefits ("DIB") based on a disability which had allegedly begun on April 21, 2000. Administrative Record at pp. 16, 27, 106-108 (certified Jan. 26, 2005) ("Rec.").[2] The SSA denied the applications initially and on reconsideration. *Id.* at pp. 28-29, 31-32. A United States administrative law judge found: (1) The Plaintiff was not disabled between April 22, 2000,

---

[1]   The Court has referred the action to the undersigned for findings and recommendations on dispositive matters. Order Referring Matter to United States Magistrate Judge (Oct. 22, 2004).

[2]   The record does not include a copy of Ms. Gardner's application for SSI, but the decision reflects that the SSI and DIB applications had been filed concurrently. Rec. at p. 16.

and April 2, 2002; but (2) she was disabled between April 3, 2002, and December 21, 2002. *Id.* at p. 46.[3]

The Appeals Council upheld the first finding and reversed the second one, with a remand for reconsideration of the Plaintiff's status beginning on April 3, 2002. *Id.* at pp. 90-91.[4]

A United States administrative law judge conducted a second hearing, applied the five-step processes mandated under 20 C.F.R. §§ 404.1520 (b)-(f) and 416.920(b)-(f), and concluded that the Plaintiff had not been disabled since April 3, 2002. *Id.* at pp. 580-653 (hearing), pp. 15-27 (decision).[5]

---

[3]     The decision states that Ms. Gardner was not disabled through April 3, 2002, and that her period of disability began April 3, 2002. *See* Rec. at pp. 44-46. Because the dates overlap, the undersigned assumes that the finding of no disability had ended on April 2, 2002, and that the period of disability had begun on April 3, 2002.

[4]     The Appeals Council stated:

The Appeals Council affirms the decision that the claimant was not disabled for the period April 21, 2000 to April 3, 2002, but has concluded that the evidence does not support the finding that the claimant is disabled beginning April 3, 2002. . . . [T]he Appeals Council vacates the hearing decision only with respect to the issue of disability beginning April 3, 2002, and remands this case for further proceedings on that issue.

Rec. at p. 90.

[5]     At step one, the judge found that the Plaintiff had not engaged in substantial gainful activity since the alleged onset date. Rec. at pp. 19, 26.

At step two, the administrative law judge found that Ms. Gardner suffered from severe impairments. *Id.* at p. 26.

At step three, the judge found that the Plaintiff did not have an impairment or combination of impairments that met or equaled a "listing". *Id.* at pp. 23, 26.

The Appeals Council declined jurisdiction,[6] and the present action followed.  Ms. Gardner alleges a failure to properly: (1) consider obesity in combination with other impairments, (2) evaluate various physicians' opinions, (3) discuss medical evidence, and (4) analyze credibility.  Plaintiff's Opening Brief at pp. 6-15 (May 2, 2005) ("Plaintiff's Opening Brief"); Plaintiff's Reply Brief at pp. 2-5 (Aug. 1, 2005) ("Plaintiff's Reply Brief").

II.   STANDARD OF REVIEW

The Court must determine whether the SSA's decision is based on substantial evidence and the correct legal standard.  *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  If the SSA's decision lacks substantial evidence or is based on an incorrect legal standard, reversal is necessary.  *See Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) ("if the [administrative law judge] failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence").

---

At step four, the judge determined that Ms. Gardner retained the residual functional capacity ("RFC") to lift ten pounds, sit six hours in an eight-hour workday, and stand and walk two hours in an eight-hour workday. *Id.* at pp. 25-26.  The judge also found limitations involving occasional stooping, crouching, kneeling, crawling, climbing, and balancing, as well as avoidance of concentrated exposure to dust, gases, fumes, odors, and poor ventilation. *Id.*  Finally, the judge concluded that the Plaintiff needed to wear wrist splints and avoid repetitive fingering. *Id.*  Based on this RFC, the judge determined that Ms. Gardner could perform her past relevant work as a receptionist. *Id.*  Thus, at step four, the administrative law judge concluded that the Plaintiff was not disabled. *Id.* at pp. 26-27.

[6]   Rec. at pp. 7-9.

III.    THE RELEVANT PERIOD OF CONSIDERATION

The parties dispute the period presently under review. Ms. Gardner contends that the period began April 21, 2000, her alleged onset date.[7] Plaintiff's Reply Brief at pp. 1-3. According to the Defendant, the relevant period began April 3, 2002, based on the instructions in the Appeals Council's remand order. Brief in Support of the Commissioner's Decision at pp. 1, 3, 6 (June 16, 2005) ("Defendant's Brief"); *see supra* p. 2. The Plaintiff is correct.

Following the first hearing, the administrative law judge concluded that the Plaintiff was not disabled between April 21, 2000, and April 2, 2002, but that she was disabled between April 3, 2002, and December 21, 2002. Rec. at p. 46; *see supra* pp. 1-2. The Appeals Council affirmed the finding of non-disability, but reversed the finding of a disability and remanded for reconsideration of the Plaintiff's condition beginning on April 3, 2002. Rec. at pp. 90-91; *see supra* p. 2.

Although the Appeals Council's remand order concerned only the later time period, Ms. Gardner could not challenge the findings regarding the earlier time period until the Commissioner issued a final decision. *See* 42 U.S.C. § 405(g) (2000) (judicial review of a denial of benefits may only be sought following a "final decision" of the Commissioner). An Appeals Council's order of remand for further administrative proceedings is not a final decision. *See Duda v. Secretary of Health and Human Services*, 834 F.2d 554, 555 (6th Cir.

---

[7]    *See supra* p. 1.

1987) (*per curium*); *see also Guy v. Barnhart*, 62 Fed. Appx. 848, 850 (10th Cir. Mar. 18, 2003) (unpublished op.) ("Because the agency's review process has not yet been completed, there is no final order within the meaning of 42 U.S.C. § 405(g) upon which to invoke the district court's subject matter jurisdiction."). The Commissioner's final decision did not exist until the Appeals Council declined jurisdiction following the second administrative decision. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). The current appeal is Ms. Gardner's first opportunity to challenge the findings regarding the earlier time period. *See supra* pp. 4-5. Thus, this Court's review encompasses the Plaintiff's condition since April 21, 2000.

IV.   FAILURE TO DISCUSS OBESITY

As alleged by Ms. Gardner, the administrative law judge committed reversible error through a failure to: (1) consider obesity in combination with other impairments, and (2) explain any related findings. Plaintiff's Opening Brief at pp. 6-9; Plaintiff's Reply Brief at pp. 3-5.

A claimant's obesity bears on whether the impairment is medically determinable, is severe, meets or equals a listing, and prevents past relevant work or other work that exists in significant numbers in the national economy. *See* Social Security Ruling 02-01p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity, 2000 WL 628049, Westlaw op. at 3 (Sept. 12, 2002). While obesity alone may not be severe, the impact from its combination "with other impairments can be greater than the effects of each of the impairments considered separately." *Id.*, 2000 WL 628049, Westlaw op. at 1. Thus, the SSA

has instructed administrative law judges to consider obesity throughout the disability determination process and explain any related findings. *Id.*, 2000 WL 628049, Westlaw op. at 1, 7; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(Q) (2004).[8]

At five feet, six and one-half inches tall, Ms. Gardner's weight fluctuated between 282 and 300 pounds and various physicians diagnosed her with obesity. *See* Rec. at pp. 222-25, 231, 234, 238, 248, 255, 279, 289, 306-307, 309, 312, 318, 322, 356, 415, 423, 434, 459, 464, 499, 502, 510, 515-17, 524, 553. This evidence indicates a medically determinable impairment from obesity. *See* Social Security Ruling 02-01p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity, 2000 WL 628049, Westlaw op. at 3 (Sept. 12, 2002) (diagnosis of obesity by a treating physician or medical records indicating consistently high body weight is sufficient to establish the existence of obesity as a medically determinable impairment). As a result, the administrative law judge had to evaluate the impact of the obesity throughout the disability determination process and in combination with the Plaintiff's other impairments. *See supra* pp. 5-6.[9]

---

[8]   This regulation states:

> The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's [RFC], adjudicators must consider any additional and cumulative effects of obesity.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(Q) (2004).

[9]   Consideration of Ms. Gardner's obesity was particularly significant in light of her musculoskeletal and cardiovascular impairments, which the administrative law judge acknowledged.

The administrative law judge's decision does not reflect consideration of Ms. Gardner's obesity either alone or in combination with other impairments. This omission constituted reversible error under the SSA's internal requirements.[10] *See supra* pp. 5-6; *see also Baker v. Barnhart*, 84 Fed. Appx. 10, 14 (10th Cir. Dec. 10, 2003) (unpublished op.)

---

*See* Rec. at pp. 21, 417-27, 555; *see also supra* note 8.

[10]   The Defendant admits that the administrative law judge did not discuss the obesity, but attempts to excuse the failure by arguing that: (1) the judge had discussed the Plaintiff's other impairments, including those which could have been affected by obesity, (2) none of the Plaintiff's physicians linked Ms. Gardner's weight to any health limitations, and (3) the failure amounted to harmless error. Defendant's Brief at p. 3. These contentions lack merit.

First, the judge's detailed recitation of Ms. Gardner's medical history and discussion of her impairments does not excuse the failure to consider and discuss the impact of her obesity, as required by the SSA. *See supra* p. 5-6.

Second, the duty to discuss the obesity did not disappear with the absence of any medical opinions linking the condition to a limitation. *See id.*

Third, the failure to discuss the Plaintiff's obesity is not harmless error because the Court cannot speculate concerning the outcome had the impairment been considered. The Tenth Circuit Court of Appeals has "generally recognized the applicability of [the principle of harmless error] in the administrative review setting." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (citations omitted). However when "a harmless-error determination rests on legal or evidentiary matters not considered by the [administrative law judge], [application of this principle] risks violating the general rule against post hoc justification of administrative action recognized in *SEC v. Chenery Corp.*, and its progeny." *Id.* (internal citation omitted). This Court cannot know whether the administrative law judge would have reached the same conclusion if he had considered the obesity. In light of this uncertainty, the Court cannot regard the administrative law judge's missing analysis as harmless. *See id.*

(remanding for failure to consider and discuss the Plaintiff's obesity in combination with other impairments).

V.   VIOLATION OF THE "TREATING PHYSICIAN RULE"

Ms. Gardner alleges that the administrative law judge had violated the "treating physician rule" when he evaluated the opinions of Dr. Bruce Stafford and Dr. Tim Grode. Plaintiff's Opening Brief at pp. 9-12; Plaintiff's Reply Brief at pp. 5-6. The Plaintiff is correct.

    A.   The Evaluation of a Treating Source's Opinion

Under the "treating physician rule," the SSA generally gives greater weight to the opinions of sources who have treated the claimant than of those who have not. *See Hackett v. Barnhart*, 395 F.3d 1168, 1173-74 (10th Cir. 2005); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2004). An administrative law judge must follow certain steps when assessing a treating physician's opinion. The judge must initially determine whether the opinion qualifies for controlling weight. *See Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004). This evaluation entails a determination of whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Id.* If the SSA answers in the negative, the inquiry ends. *Id.* But if the opinion is well-supported, the SSA must confirm that the opinion is consistent with other substantial evidence in the record. *See id.* If the opinion is deficient in either respect, it is not entitled to controlling weight. *See id.*

Even then, the SSA must weigh the opinion based on various factors. *See id.*[11] Then, the SSA must "give good reasons" for the weight assigned to the opinion. *Id.* The SSA may reject a treating source opinion outright only on the basis of contradictory medical evidence. *See id.* If the SSA rejects the opinion, it must give "specific, legitimate reasons." *Id.* If the SSA rejects the opinion based on a lack of supporting evidence, it must recontact the physician. *See id.* at 1084; *see also* 20 C.F.R. §§ 404.1512 (e)(1), 416.927 (e)(1) (2004).

### B.   Dr. Stafford

Dr. Stafford opined that Ms. Gardner suffered from fibromyalgia, degenerative joint disease, hypertension, hyperthyroid, asthma, and rheumatoid arthritis. Rec. at p. 396. Based on these impairments, Dr. Stafford concluded that the Plaintiff could sit for 45 minutes at a time, stand for 5 minutes at a time, walk for 20 minutes at a time, and lift a maximum of 5 pounds. *Id.* at pp. 397-98. The doctor also stated that Ms. Gardner suffered from constant pain at low levels, frequently interfering with attention and concentration and requiring her to lie down or rest 6-8 times per day. *Id.* at pp. 396-98. Finally, Dr. Stafford opined that Ms.

---

[11]   These factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the [administrative law judge's] attention which tend to support or contradict the opinion.

*Robinson v. Barnhart*, 366 F.3d at 1082.

Gardner would experience difficulty working at a regular full-time job on a sustained basis. *Id.* at p. 399.

The administrative law judge acknowledged Dr. Stafford's opinions, but concluded that they were not entitled to controlling weight or special significance. *Id.* at p. 21. The judge stated:

> The Appeals Council noted that there were no treatment records or objective reports to support [Dr. Stafford's] assessment. The opinion of the Appeals Council remains valid. No additional information from Dr. Stafford has been obtained or provided. A case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion. . . . Although Dr. Stafford's opinions, including his opinions on vocational matters outside his area of expertise, have not been disregarded, they are not entitled to controlling weight or special significance.

*Id.* (citations omitted).

According to Ms. Gardner, the administrative law judge failed to evaluate the opinions with the appropriate factors and improperly rejected the opinions without recontacting Dr. Stafford for clarification. Plaintiff's Opening Brief at pp. 9-11; Plaintiff's Reply Brief at pp. 5-6. The Court should conclude that: (1) Dr. Stafford qualified as a treating source, (2) the administrative law judge erroneously failed to weigh Dr. Stafford's opinions under the factors set forth by the SSA, and (3) the administrative law judge should have recontacted Dr. Stafford for clarification of his opinion.

Dr. Stafford's Qualification as a "Treating Source"

As an initial matter, the Defendant denies the existence of a treatment relationship between Ms. Gardner and Dr. Stafford. Defendant's Brief at pp. 4-6. The Defendant is incorrect.

The Social Security regulations define a treating physician as:

> [a] physician . . . who . . . has provided [claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]. . . . [A]n ongoing treatment relationship [exists] . . . when the medical evidence establishes that [claimant] see[s], or ha[s] seen, the [physician] with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [claimant's] medical condition(s).

20 C.F.R. §§ 404.1502, 416.902 (2004). Records identified Dr. Stafford as Ms. Gardner's "physician" or "primary care physician," and he provided treatment from August 2002 to December 2003. *See* Rec. at pp. 414-16, 503-510, 512-17. Based on the ongoing nature of the treatment, Dr. Stafford qualified as a "treating source." *See*, *e.g.*, *Ketcher v. Chater*, 77 F.3d 492, 1996 WL 80469, Westlaw op. at 1 (10th Cir. Feb. 26, 1996) (unpublished op.) (an orthopedic surgeon who had seen the plaintiff five times in a one year period qualified as a treating source).

The Administrative Law Judge Erred in His Evaluation of Dr. Stafford's Opinion

Dr. Stafford rendered several opinions regarding Ms. Gardner's limitations, and the administrative law judge rejected them based on a lack of supporting treatment records or objective reports. *See supra* pp. 9-10. Ms. Gardner alleges that the administrative law judge

had erroneously failed to weigh the opinions with the pertinent factors and to recontact Dr. Stafford. Plaintiff's Opening Brief at pp. 10-11; Plaintiff's Reply Brief at pp. 5-6. The Plaintiff is correct.

The judge was entitled to give less than controlling weight to Dr. Stafford's opinions if he concluded they were not well-supported. *See supra* p. 8. But the judge was not allowed to end his analysis at this point. Once he decided that the opinions did not merit controlling weight, he had a duty to apply various factors and to explain the weight assigned. *See id.* pp. 8-9. In addition, because the judge concluded that the opinions were not supported by objective findings,[12] he had a duty to recontact Dr. Stafford. *See id.* The decision stated that "[n]o additional information from Dr. Stafford ha[d] been obtained or provided." Rec. at p. 21. But the administrative law judge did not indicate that he had attempted to recontact Dr. Stafford for additional information.

The Tenth Circuit Court of Appeals addressed a similar set of facts in *Robinson v. Barnhart*, 366 F.3d 1078 (10th Cir. 2004). There the plaintiff challenged the administrative law judge's evaluation of a treating physician's opinion. *See Robinson v. Barnhart*, 366 F.3d at 1080. Without recontacting the treating doctor, the administrative law judge stated that the opinion was vague and did not identify specific symptoms or indicate the severity of each limitation. *Id.* at 1081. The appellate court concluded that the administrative law judge had

---

[12]     *See supra* p. 10.

erred through the failure to specify the weight assigned to the opinion, to discuss any of the relevant factors set forth in 20 C.F.R. §§ 404.1527 and 416.927,[13] and to recontact the physician for clarification after concluding that it was not well-supported. *Robinson v. Barnhart*, 366 F.3d at 1084.

*Robinson v. Barnhart* is persuasive. As stated above, the administrative law judge disregarded Dr. Stafford's opinions due to a lack of supporting findings or reports. *See supra* p. 10. Although the judge stated that he was not affording the opinions controlling weight, he failed to: (1) specify the weight assigned to them, (2) discuss the relevant factors, and (3) recontact Dr. Stafford to explain his opinions prior to rejecting them. These failures are fatal.[14]

### C.    Dr. Grode

In May 2000, Dr. Grode opined that Ms. Gardner could not "hold any long-term job because of the need to frequently change positions and because of chronic pain." Rec. at p. 222. Dr. Grode also stated that the Plaintiff's limitations would require her to rest

---

[13]    *See supra* note 11.

[14]    The Defendant argues that because Dr. Stafford was not a treating physician, the opinions were not entitled to controlling weight and the administrative law judge's explanation was sufficient. Defendant's Brief at pp. 5-6. But the Defendant's argument would remain invalid even if Dr. Stafford had not qualified as a treating physician. When an administrative law judge evaluates a medical opinion, he must consider all of the regulatory factors in deciding the weight to be given. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d) (2004). Because the judge failed to engage in this analysis, the decision was deficient regardless of whether Dr. Stafford qualified as a treating source. *See supra* pp. 12-13.

intermittently throughout the day, which would preclude any type of work. *Id.* The administrative law judge discounted Dr. Grode's opinions for two reasons. First, the judge believed that the opinions merely reflected the Plaintiff's subjective complaints. *Id.* at p. 19. Second, the administrative law judge discounted the opinions based on the conclusion of state agency physicians. *Id.* The administrative law judge erred in his evaluation of Dr. Grode's opinions.

In April 2000, the Plaintiff outlined various impairments in a letter to Dr. Grode and requested a letter to support her claims. *Id.* at p. 221. Dr. Grode responded in May 2000, stating in part that Ms. Gardner could not work due to chronic pain and the need to frequently change positions and rest throughout the day. *Id.* at p. 222; *see supra* p. 13.[15] The administrative law judge rejected this opinion in part based on a belief that it merely restated the Plaintiff's complaints as outlined her letter. Rec. at p. 19. But Dr. Grode's other records support the limitations set out in his May 2000 letter.

For example, in July 1999, Dr. Grode opined that Ms. Gardner suffered from degenerative osteoarthritis, which resulted in low back and buttock pain, cervical pain across the upper shoulder, musculoskeletal pain in her feet, pain in the ankle area, and degenerative

---

[15] In response, the Defendant contends that the administrative law judge could have discounted the opinions because they were outside the relevant period. Defendant's Brief at pp. 6-7. But this argument is invalid for two reasons. First, Dr. Grode's opinions were rendered within the relevant time period. *See supra* pp. 4-5. Second, the administrative law judge never stated that he was discounting the opinion on this basis. Thus, the Court cannot affirm based on the Defendant's post-hoc justification. *See Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) ("Affirming this post hoc effort to salvage the [administrative law judge's] decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process.").

osteoarthritis in the knees.  *Id.* at p. 225.  At the time, Dr. Grode believed that those impairments resulted in a temporary total disability.  *Id.*

Similarly, in January 2000, Dr. Grode opined that Ms. Gardner had chronic hand pain and degenerative osteoarthritis.  *Id.* at 569.

These opinions were rendered before Ms. Gardner's request and support Dr. Grode's May 2000 opinion concerning limitations due to chronic pain.[16]  Because the diagnoses in July 1999 and January 2000 support Dr. Grode's later correspondence, the administrative law judge should not have automatically assumed that the latter was based solely on the Plaintiff's subjective complaints.[17]

The Tenth Circuit Court of Appeals addressed a similar issue in *Victory v. Barnhart*, 121 Fed. Appx. 819 (10th Cir. Feb. 4, 2005) (unpublished op.).  There the plaintiff's treating physician rendered an opinion concerning postural and exertional limitations.  *See Victory v. Barnhart*, 121 Fed. Appx. at 823.  The administrative law judge rejected the opinion in part

---

[16]  Although the opinions were rendered before the relevant period, they should have been considered. See  *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (reversing for failure to consider opinions from earlier, previously adjudicated periods, because "the doctor's observations are nevertheless relevant to the claimant's medical history and should be considered by the [administrative law judge]").

[17]  Ms. Gardner also argues that the administrative law judge had failed to discuss Dr. Grode's opinions regarding numbness in her left arm with repetitive movement and complications due to bilateral carpal tunnel syndrome.  Plaintiff's Opening Brief at p. 12.  But the alleged failure to specifically discuss these opinions would have been harmless, as the judge had made concessions for these conditions in the RFC determination.  *See* Rec. at pp. 25-26; *supra* note 5.

because he believed that it was based solely on the plaintiff's subjective complaints. *See id.* at 824. The Tenth Circuit Court of Appeals concluded that the administrative law judge had improperly speculated that the treating physician's report was based on the plaintiff's subjective allegations. *Id.* at 823. The court pointed out that the treating physician's report had not indicated that it was based on the plaintiff's subjective complaints, and the record contained other supporting evidence from the doctor. *Id.* As a result, the court concluded that the administrative law judge should have evaluated the opinion under the "treating physician rule," discussing various factors and explaining the weight accorded to the opinion. *Id.* at 822. The failure to do so required reversal and remand. *Id.*

*Victory v. Barnhart* is persuasive. *See* Tenth Cir. R. 36.3(B). As discussed earlier, the administrative law judge rejected Dr. Grode's opinions in part because he believed that they involved a mere restatement of the Plaintiff's subjective allegations. *See supra* p. 14. But Dr. Grode did not state that he had based his May 2000 opinion on Ms. Gardner's subjective statements, and other evidence supported the opinion. The administrative law judge erred, just as another had done in *Victory v. Barnhart*.

VI.    FAILURE TO DISCUSS THE OPINION OF AN EXAMINING PHYSICIAN

In August 2001, Judith James, M.D. examined the Plaintiff and rendered opinions concerning her impairments. Rec. at pp. 318, 558. The administrative law judge erred through his failure to discuss the doctor's opinions or explain their significance.

Following her examination, Dr. James noted objective evidence of reduced motion in the neck, lumbar lordosis, reduced grip due to pain, and ankle swelling. *Id.* In addition, Dr. James stated that Ms. Gardner was a "psychological 'cripple' [who would] not [ ] improve before these underlying psychological issues [were] addressed." *Id.*[18] The administrative law judge never referred to these opinions. *See* Rec. at pp. 15-27. But Dr. James' findings involved medical opinions, which the judge should have considered. *See* 20 C.F.R. §§ 404.1527(a)(2), (d) & 416.927(a)(2), (d) (2004).

The Tenth Circuit Court of Appeals recently addressed a similar issue in *Lackey v. Barnhart*, 127 Fed. Appx. 455 (10th Cir. Apr. 5, 2005) (unpublished op.). There an examining physician found that the plaintiff had a "limited range of motion" and opined that the condition was permanent. *See id.* at 456, 458. The appellate court held that the administrative law judge had erred through a failure to mention any of the examining physician's opinions. *Id.* at 458 ("the [administrative law judge's] failure to mention Dr. Metcalf or his records *at all* clearly violates the Commissioner's own directives with regard to either § 404.1527(a)(2) or § 404.1527(e) opinions" (emphasis in original)).

---

[18] The Plaintiff also contends that Dr. James had rendered an opinion regarding "tendenress [sic] in the finger joint." Plaintiff's Opening Brief at p. 13. But Dr. James' records do not reflect such a diagnosis. *See* Rec. at pp. 318, 558.

17

The decision is persuasive because of the similarity in facts. *See* Tenth Cir. R. 36.3(B). As in *Lackey*, the administrative law judge failed to discuss any of the examining doctor's opinions and the omission constituted reversible error.[19]

## VII. THE ADMINISTRATIVE LAW JUDGE'S CONSIDERATION OF OTHER EVIDENCE

Ms. Gardner also argues that the administrative law judge had erred when he evaluated an October 2002 EMG report. Plaintiff's Opening Brief at pp. 13-14. The undersigned agrees.

In concluding that the Plaintiff's carpal tunnel syndrome had improved, the administrative law judge relied in part on an EMG report dated October 2002. Rec. at p. 21. But this report was for a different patient. *See id.* at pp. 547-48. As a result, the administrative law judge erroneously relied on this report in his evaluation of Ms. Gardner's carpal tunnel syndrome.

## VIII. THE PLAINTIFF'S OTHER CLAIMS

The Plaintiff also claims errors in the administrative law judge's analysis of credibility and certain medical evidence. Plaintiff's Opening Brief at pp. 13-15. The suggested remand

---

[19] The Defendant argues that the administrative law judge need not have discussed Dr. James' opinion because: (1) the opinion was rendered outside the relevant period, and (2) Dr. James was not a mental health professional. Defendant's Brief at pp. 7-8. Both contentions are invalid. First, Dr. James' August 2001 opinion was rendered within the relevant period. *See supra* pp. 4-5. Second, a physician's medical specialty may bear on the weight accorded to the opinion, but the judge cannot ignore the evidence. *See* 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5) (2004); *see also Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) (rejecting an administrative law judge's opinion that a doctor's opinion regarding mental functioning can be disregarded because he is not a mental health specialist).

would entail reconsideration of medical opinions concerning the extent of Ms. Gardner's subjective complaints such as pain. *See supra* pp. 9-18. Thus, the Court need not address the Plaintiff's claims involving the credibility analysis. *See Knight v. Apfel*, 131 F.3d 151, 1997 WL 760719, Westlaw op. at 4 (10th Cir. Dec. 10, 1997) (unpublished op.) (noting that a remand for consideration of medical opinions would require reassessment of the claimant's credibility about her subjective complaints of pain).

The same is true of Ms. Gardner's claims involving the analysis of medical records. According to the Plaintiff, the administrative law judge disregarded medical notations involving increased blood pressure, fibromyalgia, pain, and slow movements. Plaintiff's Opening Brief at pp. 13-15. Reconsideration of the obesity could affect the administrative law judge's analysis of the blood pressure readings. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 4.00(F) (2004) (noting the connection between obesity and disturbance of the cardiovascular system); Social Security Ruling 02-01p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity, 2000 WL 628049, Westlaw op. at 3 (Sept. 12, 2002) (same). Similarly, the suggested remand of opinions by Drs. Stafford, Grode, and James could affect the administrative law judge's analysis of the medical records involving fibromyalgia, pain, and slowness. *See supra* pp. 9-18. Thus, the Court need not address whether the administrative law judge's earlier review of these records constituted an independent error. *See id.* p. 19.

IX.     RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

The Court should reverse and remand for reconsideration of the Plaintiff's obesity, an October 2002 EMG report, and the opinions by Dr. Stafford, Dr. Grode, and Dr. James.

Any party may file written objections with the Clerk of the United States District Court.  See 28 U.S.C. § 636(b)(1) (2000).  The deadline for objections is October 11, 2005.  *See* W.D. Okla. LCvR 72.1(a).  The failure to file timely objections would result in waiver of the right to appeal the suggested ruling.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

X.      STATUS OF THE REFERRAL

The referral is terminated.

Entered this 21st day of September, 2005.

_____
Robert E. Bacharach
United States Magistrate Judge